968 F.2d 1218
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
LONG-MIDDENDORF CORPORATION, Plaintiff-Appellee,
v.
DIETRICH INDUSTRIES, Defendant-Appellant.
 No. 91-3234.
 United States Court of Appeals, Seventh Circuit.
 Argued April 15, 1992.
Decided July 21, 1992.
 
 1
 Before CUMMINGS and POSNER, Circuit Judges, and HUBERT L. WILL, Senior District Judge.*
 
 ORDER
 
 2
 This case presents an accord and satisfaction issue under Indiana law. Plaintiff Long-Middendorf Corporation sued Dietrich Industries, Incorporated, for breach of lease. Although the suit was filed in an Indiana court, it was removed to the district court by defendant because of diversity of citizenship. In September 1988 a one-day bench trial was held before the district judge. Nearly three years later, he entered findings of fact and conclusions of law and a judgment of $125,161.63 in favor of plaintiff, resulting in this appeal.
 
 Statement of Facts
 
 3
 The district court made 202 detailed findings of facts below, which the defendant does not assail and upon which we therefore rely. Because of the nature of this appeal, we need only briefly summarize the parties' dispute. According to the findings of fact, in September 1984 Dietrich was leasing space at Wolf Lake Terminals in Hammond, Indiana, from Long-Middendorf. The space eventually consisted of five bays encompassing 200,000 square feet. The first lease was executed in 1978.
 
 
 4
 At a September 6, 1984, meeting Dietrich, which was moving elsewhere in Hammond, inquired whether Long-Middendorf would permit M.R. Berlin Co. to become the new tenant of three of the five bays. While there was no written agreement to this effect at the conclusion of the September 6th meeting, Long-Middendorf did agree to clean the floors and repair the columns and allowed Dietrich to remain a tenant in two of the bays through December 1984 at no cost. In return, Dietrich promised to leave the air system, electrical buss duct system, gas fire heater units, telephone system and security system in place for Berlin's use.
 
 
 5
 On October 3, 1984, Dietrich mailed a letter, a proposed "Agreement," and a check for $9,666.67 to Michael Anderson of Arthur Rubloff & Co., Dietrich's agent who had attended the September 6 meeting. Acting pursuant to Dietrich's instructions, Anderson delivered the letter, check and "Agreement" to Long-Middendorf on October 11. The proposed Agreement released Dietrich and Long-Middendorf from all obligations to the other, upon consideration of $36,000 paid by Dietrich to Long-Middendorf. It also obligated Long-Middendorf to perform certain repairs and to allow Dietrich to remain a tenant in two bays through December 1984, and it obligated Dietrich to abandon certain equipment. The $9,666.67 check accompanying the letter represented the $36,000 consideration less $26,333.33, which Dietrich asserted Long-Middendorf held as a security deposit. The check itself had the following on its comment line: "$36,000 less $26,333.33 security deposit."
 
 
 6
 Middendorf expressed his disagreement with Dietrich's proposed agreement and stated that he required additional items to be included before he would sign it and so informed Anderson, who advised Dietrich of Middendorf's refusal a day or two later. The disagreement was as to which party was going to complete which repairs. Garland Middendorf cashed the $9,666.67 check later on October 20, but never signed the accompanying proposed agreement. Instead, Middendorf on November 2 submitted a counter-agreement to Dietrich which it refused to sign.
 
 
 7
 Based on the foregoing facts, the district court held there was no meeting of minds to support a finding of accord and satisfaction because "Both parties were aware that issues remained unsettled when Dietrich tendered the October 3, 1984, check to Long-Middendorf [and] the draft release was never executed" (Conclusion of Law 15 reproduced in defendant's Br.App. 56). Therefore the court concluded that Long-Middendorf's cashing the check did not resolve the disputes between the parties and entered judgment for $125,161.63 for plaintiff.[1] We affirm but reduce the judgment by $10,000.
 
 Analysis
 
 8
 We apply Indiana law in this case, since the leased property is located in Indiana, the alleged lease breaches occurred there and the parties have argued Indiana law, so that Indiana law controls (Defendant's Br.App. 54-55). Dietrich raises only one issue on appeal: whether the district court erred in holding that Long-Middendorf's act of cashing the October 3 check was not an accord and satisfaction. A preliminary issue is the proper standard of review. Dietrich contends that de novo review is proper, because the relevant facts are undisputed and "the issue of accord and satisfaction * * * becomes one of law * * * if the requisite controlling facts are undisputed and clear." Rauch v. Shots, 533 N.E.2d 193, 194 (Ind.App.1989). Long-Middendorf counters that the district court's finding is based on the factual question of whether it agreed to the terms of the proposed agreement, and is thus subject to clearly erroneous review. We need not resolve this issue, because even under de novo review, affirmance is appropriate.
 
 
 9
 It is clear that Dietrich and Long-Middendorf had a good-faith dispute over their respective obligations, and that Dietrich made an offer of compromise by sending the check and proposed agreement to Long-Middendorf. We observed in Tremps v. Ascot Oils, Inc., 561 F.2d 41, 47 (1977), that "An accord is an agreement to compose or settle, and the satisfaction is the execution of the agreement" (citing Karvalsky v. Becker, 217 Ind. 524, 29 N.E.2d 560 (1940)). At issue here is whether Long-Middendorf agreed to settle the dispute, and simultaneously executed the agreement to settle when it cashed the accompanying check. The district court found that
 
 
 10
 There was no meeting of the minds to support a finding of accord and satisfaction in this case. Both parties were aware that issues remained unsettled when Dietrich tendered the October 3, 1984 check to Long-Middendorf. The draft Release was never executed, and neither the conditions upon which the check was tendered nor the circumstances indicate clearly and unequivocally that cashing the check tendered resolved all disputes between the parties.
 
 
 11
 (Conclusion of Law 15, Defendant's Br.App. 56-57).
 
 
 12
 The issue of when cashing a check operates as full satisfaction is not a novel one. One commentator has concluded, "Where the amount due is in dispute, and the debtor sends [a] check for less than the amount claimed, clearly expressing that it is sent as settlement in full * * *, the * * * cashing of the check is almost always held to be an acceptance of the offer operating as full satisfaction." 6 Arthur Corbin, Corbin on Contracts, § 1279. Dietrich argues that it is irrelevant that "there was no meeting of the minds," because Long-Middendorf's objective act of cashing the check defeated any subjective intent on Long-Middendorf's part to avoid a compromise. It is true that courts generally have little sympathy for creditors who cash checks clearly in settlement of a dispute and who then assert that were only cashing the check as partial payment. See, e.g., Nelson v. Fire Ins. Exchange, 156 Ill.App.3d 1017, 1020, 510 N.E.2d 137, 139 (1987). Since actions speak louder than words, in such cases an actual meeting of the minds is not necessary. See Corbin, supra, § 1279. Dietrich's argument overlooks, however, the district court's conclusion that "neither the conditions upon which the check was tendered nor the circumstances indicate clearly and unequivocally that cashing the check resolved all disputes between the parties."
 
 
 13
 The check tendered by Dietrich did not indicate that it was in full satisfaction of its debt and many issues remained unresolved between the parties after the delivery of the check. Indeed Middendorf refused to sign the settlement agreement submitted to it by Dietrich's agent on October 11 and submitted its own settlement agreement to Dietrich on November 2, thus indicating its cashing of Dietrich's $9,666.67 check, woefully inadequate from plaintiff's viewpoint, did not settle the dispute. The settlement agreement tendered by Middendorf required Dietrich to effect major repairs and replacements (App. 360-365) and was rejected a few days later (App. 366-367), thus causing this lawsuit.
 
 
 14
 If the act of cashing the check is to be deemed acceptance of an accord, then the offeror must make that clear, because otherwise an innocent act would be construed as a waiver of important rights. The court in Miller Jewelry Co. v. Dickson, 111 Ind.App. 676, 42 N.E.2d 398, 401 (Ind.App.1942) (en banc), rejected an accord and satisfaction defense based on a check marked only "Rent for Dec/34," despite the presence of a dispute over the amount of rent, emphasizing that "there is no allegation that an obligation to return the check was imposed upon the rental agents or the lessor if such check was not accepted as full payment of the rent, nor do appellants in any way indicate that their intention to impose such a condition was made known." Similarly, in Allegheny Airlines, Inc. v. Forth Corp., 663 F.2d 751, 757 (1981), in applying Indiana law, we denied the defense of accord and satisfaction because the tendered sum was not offered with an express condition that it was paid in full satisfaction of an obligation. Another of our cases, Bernardin, Inc. v. Midland Oil Corporation, 520 F.2d 771, 774 (1975), involved goods sold and delivered to defendants at plaintiff's Indiana warehouse. Plaintiff negotiated a check in partial payment bearing the notation "Balance remaining $10,000.00." We held that this did not amount to an accord. These cases are in harmony with Judge Lozano's conclusion that the cashing of Dietrich's check, while refusing to execute the tendered agreement and instead shortly afterwards proffering its own agreement, did not amount to an accord or satisfaction. Dietrich never indicated on its October 3 check or on the accompanying proposed agreement that the act of cashing the check was to be considered acceptance of the agreement. Therefore the district court correctly concluded that there was no accord and satisfaction.[2]
 
 
 15
 The cases relied upon by Dietrich are easily distinguishable by the specificity of the terms directly on the check cashed by the creditors in those cases. Dietrich relies heavily on Teledyne Mid-America Corp. v. HOH Corp., 486 F.2d 987 (9th Cir.1973), but there the check from Holt bore the typed notation "In full payment of all Holt trade obligations." Id. at 991.[3] In contrast, Dietrich's check merely stated "For $36,000.00 less $26,333.33 security deposit," nowhere indicating to plaintiff that its cashing that check would settle the dispute between them. There is nothing to show that by cashing the check Middendorf was accepting full satisfaction of the claim. To the contrary, on October 11 he refused to sign defendant's tendered agreement which provided for mutual releases, and on November 2 sent his counter-agreement for mutual releases that defendant refused to sign. The check itself bore no accord and satisfaction or release phraseology. Because it is neither unequivocal nor clear that cashing the check resolved the disputes, under Indiana law the defense of accord and satisfaction was properly rejected.
 
 
 16
 Judgment affirmed in the amount of $115,161.63.[4]
 
 
 
 *
 The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation
 
 
 [1]
 The judgment consisted of $113,000 for rental loss, $1,361.63 for building repairs, and $800 to replace duct work (Conclusion of Law 16, Defendant's Br.App. 57). These items total $115,161.63 rather than the $125,161.63 awarded apparently through erroneous addition
 
 
 [2]
 See also Rauch v. Shots, supra (reversing accord and satisfaction defense granted on summary judgment, noting that there was a genuine issue of material fact whether the release language on the check covered only property damage and not personal injuries); Daube v. LaPorte County Farm Bureau Co-op. Ass'n, 454 N.E.2d 891 (Ind.App.1983) (no accord and satisfaction where debtor did not clearly express intention that payment satisfied all claims)
 
 
 [3]
 Also distinguishable are Gearhart v. Baker, 393 N.E.2d 258, 260 (Ind.App.1979) (check bore phrase "Pd. to date & in full"); Air Van Lines, Inc. v. Buster, 673 P.2d 774, 777 (Alaska 1983) (check bore phrase "as full and complete payment * * *. Endorsement of this check constitutes a complete settlement of your claim."); Rang v. Hartford Variable Annuity Life Ins. Co., 908 F.2d 380, 381 (8th Cir.1990) (check bore phrase "THE ENDORSEMENT OF THIS CHECK BY PAYEE CONSTITUTES A CLEAR RELEASE IN FULL SETTLEMENT OF THE STATED ACCOUNTS.")
 
 
 [4]
 See n. 1 supra