**Jules MOMINEE d/b/a Mominee Studios, Appellant–Defendant,**

**v.**

**Bob KING d/b/a King's Art Glass, Appellee–Plaintiff.**

No. 82A01–9308–CV–277.

Court of Appeals of Indiana,
First District.

March 8, 1994.

Bradley J. Salmon, Lacey Terrell Annakin Heldt & Baugh, Evansville, for appellant-defendant.

Rodney H. Grove, Grove Law Office, Evansville, for appellee-plaintiff.

NAJAM, Judge.

## STATEMENT OF THE CASE

Jules Mominee appeals the trial court's money judgment in favor of Bob King. King initiated this breach of contract action to recover damages for unpaid commissions that Mominee allegedly owed him under their referral agreement. Mominee contends there was an accord and satisfaction which discharged his debt to King and that the trial court erred in its judgment.

We agree with Mominee and reverse.

## ISSUE

Mominee presents three issues for our review. Because we conclude one issue is dispositive, we address only the following question: whether an accord and satisfaction results when a check, expressly conditioned as payment in full on a disputed account, is cashed by the creditor and the creditor understands the condition upon which the debtor tendered the check.

## FACTS

In 1983, Mominee and King entered into an oral commission agreement. King was in the business of repairing stained glass windows and installing storm window coverings. The agreement provided that King would refer customer leads to Mominee, whose business it was to design and manufacture stained glass windows. In return for King's referrals, primarily for church window jobs, Mominee would pay King a commission equal to 10% of the contract price which the customer paid Mominee for his stained glass.

In 1984, Mominee and King orally modified their agreement and adjusted the amount of King's commission to account for changes in the design of Mominee's stained glass windows. Between late 1984 and early 1989, Mominee calculated King's commissions based on his understanding of their oral agreement and forwarded payment to King, who cashed all of Mominee's checks without requesting an accounting. However, a dispute arose in February of 1989 regarding the amount of commissions King was entitled to receive. King claimed that Mominee had not been paying him the full 10% commission and requested that Mominee pay him the alleged balance due in full. Mominee disagreed, and he and King met shortly thereafter in an attempt to resolve their dispute. They could not agree and terminated their business relationship.

During their meeting, Mominee informed King that he owed King only $812.00 in unpaid commissions for a job in Beecher, Illinois. King did not dispute that $812.00 was owed on the Beecher job, but he disagreed that it was the only unpaid commission and that it was the full amount Mominee owed him for all commissions. After the meeting, Mominee gave King his check for $812.00, dated February 10, 1989, which included the following language in the memo

section: "Balance on Commissions Payment in full." Record at 132, Defendant's Exhibit 6.

Subsequently, King inserted the word "not" in the memo section so that the notation then read, "Balance on Commissions Payment *not* in full." Record at 209 (emphasis added). On April 7, 1989, after waiting nearly two months, King endorsed and cashed Mominee's check as modified.

King filed his complaint on December 13, 1991, and alleged that Mominee breached the parties' oral contract by not paying full commissions for seven job referrals which King sent to Mominee before the parties terminated their business relationship. Mominee moved for summary judgment on the affirmative defense of accord and satisfaction, but his motion was denied. Following a bench trial, the trial court entered judgment for King.

## DISCUSSION AND DECISION

### Standard of Review

 Because Mominee had the burden of proof at trial on his affirmative defense, he appeals from a negative judgment. When a party appeals from a negative judgment, he must demonstrate that the evidence points unerringly to a conclusion different from that reached by the trial court. *Communications Workers of America, Locals 5800, 5714 v. Beckman* (1989), Ind.App., 540 N.E.2d 117, 127. We will reverse a negative judgment only if the decision of the trial court is contrary to law. *Aetna Casualty & Sur. Co. v. Crafton* (1990), Ind.App., 551 N.E.2d 893, 894. In determining whether a trial court's decision is contrary to law, we must determine if the undisputed evidence and all reasonable inferences to be drawn therefrom lead to but one conclusion and the trial court has reached a different one. *Id.*

### Accord and Satisfaction

Mominee asserts that an accord and satisfaction resulted when he tendered a check to King who, understanding Mominee's intent that the check was payment in full for all commissions, accepted the check by endorsing and cashing it. King contends that the check did not satisfy Mominee's debt to him because, under Indiana law, where there exists more than one claim or account against a debtor, payment for the exact amount of one claim is not satisfaction of all outstanding claims.

 "Accord and satisfaction is a method of discharging a contract, or settling a cause of action by substituting for such contract or dispute an agreement for satisfaction." *Daube and Cord v. LaPorte County Farm Bureau* (1983), Ind.App., 454 N.E.2d 891, 894. The term "accord" denotes an express contract between two parties by means of which the parties agree to settle some dispute on terms other than those originally contemplated, and the term "satisfaction" denotes performance of the contract. *Reed v. Dillon* (1991), Ind.App., 566 N.E.2d 585, 590. As a contract, accord and satisfaction requires a meeting of the minds or evidence that the parties intended to agree to an accord and satisfaction. *See Erie Co. v. Callahan Co.* (1933), 204 Ind. 580, 585, 184 N.E. 264, 266. Under Indiana Trial Rule 8(C), accord and satisfaction is an affirmative defense which must be specifically pleaded and proven by the party raising it. The question of whether the party making the defense has met its burden is ordinarily a question of fact but becomes a question of law if the requisite controlling facts are undisputed and clear. *See Rauch v. Shots* (1989), Ind.App., 533 N.E.2d 193, 194, *trans. denied.*

 An accord and satisfaction, with regard to checks tendered as payment in full, operates as follows:

"where the amount is unliquidated or disputed, and a remittance of an amount less than that claimed is sent to the creditor with a statement that it is in full satisfaction of the claim, and the tender is accompanied by such acts or declarations as amount to a condition that if the remittance is accepted it is accepted in full satisfaction of the disputed claim, and the creditor is cognizant of such conditions, the acceptance of such a remittance by the creditor constitutes an accord and satisfaction, even though the creditor protests at

the time that the amount tendered is not accepted in full satisfaction unless the debtor withdraws or waives the condition that it be accepted in full satisfaction. In other words, one who accepts and cashes a check tendered in full payment of a disputed claim cannot vary the legal effect of such acceptance as an accord and satisfaction by merely ignoring the condition and protesting that he is accepting the check as partial payment only, or by failing to sign the formal receipt enclosed acknowledging full satisfaction, or by endorsing on the check that it is accepted as part payment."

1 Am.Jur.2d *Accord and Satisfaction* § 21, at 320. Similarly, under Indiana law, a check tendered in satisfaction of a claim must be accompanied by an express condition that the acceptance is in full satisfaction of the claim and that the creditor takes the check subject to that condition. *Rauch,* 533 N.E.2d at 194. Further, and most importantly, the creditor must positively understand the condition upon which the check is tendered. *Id.*

 Here, the parties met in an attempt to resolve a disputed debt. It is uncontroverted that Mominee and King did not agree and were unable to resolve the dispute over the amount of unpaid commissions that Mominee owed King. Mominee subsequently informed King that his outstanding debt to King was $812.00, representing only the commission from the Beecher job. Mominee then tendered a check to King for that same amount. The check included a notation which stated: "Balance on Commissions Payment in full." At trial, Mominee testified that he did not owe King any unpaid commissions, and he presented his calculations and the cancelled checks which he had given to King. We conclude that Mominee specifically intended to submit his check as payment in full for all unpaid commissions and that he sufficiently expressed that intent.

On appeal, King contends that "he did not know Mominee's intent by the tender of the Beecher check," but at trial King testified that he fully understood Mominee's intent at the time Mominee gave him the disputed check. Brief of Appellee at 16. At trial, King stated on cross-examination:

"A. After our meeting, when he gave me this check here, I took this as this was a check for the balance on *all commissions; not just Beecher, but all commissions.*

Q: That's right.

A: That's why I inserted the word, not."

Record at 211 (emphasis added). King also testified that he inserted the word "not" in the memo section of the check, so that at the time he cashed the check, it stated, "Balance on all commissions Payment not in full." King's addition of the word "not" into the condition Mominee placed on the check indicates both that the amount of unpaid commissions was in dispute and also that King understood Mominee had submitted the check as payment in full. Thus, the Record shows the clear intent of the parties, unlike in *Tabani v. Hester* (1977), 174 Ind.App. 56, 366 N.E.2d 193, where we concluded that the debtor did not clearly express, and the creditor did not understand, the debtor's intent. Here, both King's conduct and his testimony establish that, whether or not he agreed with Mominee's condition, he positively understood that the check he cashed was tendered as payment in full for all commissions. On appeal, King cannot repudiate either his conduct or admissions and avoid the legal import of that evidence.

King contends that our decision in *Daube* applies and precludes an accord and satisfaction because here, as in *Daube,* there was more than one claim or account in dispute between the parties. In that case, the debtor, Daube, purchased grain feed products and petroleum products from the Farm Bureau Co-op. Daube became delinquent on his open account, and Farm Bureau filed suit for the outstanding balance of almost $30,-000.00. Immediately thereafter, Farm Bureau billed Daube for the petroleum products in the amount of $1,136.05. Daube returned a check in payment for that amount, with the notation "Acct. pd. in full June 24, 1981." *Daube and Cord,* 454 N.E.2d at 894. The check was accompanied by Farm Bureau's specific billing for petroleum products. We rejected Daube's contention that when Farm Bureau cashed his check for $1,136.05, an accord and satisfaction resulted which dis-

charged the entire $30,000.00 debt. We held that "[I]n cases where there exists more than one claim or account against a debtor, the creditor may reasonably assume that payment for the exact amount of one claim or billing was intended to settle that claim alone." *Id.* Because Daube's check accompanied the specific billing for petroleum products, we concluded that "the only reasonable inference suggested is that this amount [$1,136.05] was paid to satisfy the bill for petroleum products only." *Id.*

We reject King's assertion that *Daube* presents a hard and fast rule for accord and satisfaction when more than one account or claim is in dispute. In *Daube* we also stated that, "[S]uch payment will not satisfy all claims *unless the debtor specifically expresses such intention.*" *Id.* (emphasis added). As shown above, Mominee clearly expressed his intent and the check was tendered to King immediately following a meeting between the parties where the balance of unpaid commissions was discussed and disputed. The $812.00 balance due on the Beecher job was the only amount Mominee believed he owed King, and that amount was tendered to King as payment in full for all disputed commissions. We are not persuaded by King's reliance on *Daube* merely because the only amount which Mominee believed he owed, and paid for all disputed commissions, was also the exact balance due on one job.

King's contention that Mominee's intent in tendering the check was ambiguous and that King "merely attempted to clarify the grounds on which he negotiated the check by inserting the word 'not' on the face of the check," is without merit. Brief of Appellee at 18. "The moment the creditor endorses and collects the check with knowledge that it is offered in full satisfaction of a disputed claim, he thereby agrees to the condition and is estopped from denying such agreement. It is then that the minds of the parties meet

and the contract of accord and satisfaction becomes complete." 1 Am.Jur.2d *Accord and Satisfaction* § 18, at 317. Contrary to King's assertion, the controlling facts here are undisputed, making the determination of whether there was an accord and satisfaction a question of law. *See Rauch,* 533 N.E.2d at 194.

When Mominee presented the check with a condition attached, King could either accept or reject the check on its terms, but he could not obtain the benefits of the check without also accepting its burdens. *See Quaintance Associates, Inc. v. PLM, Inc.* (1981), Ill.App., 95 Ill.App.3d 818, 51 Ill.Dec. 153, 156, 420 N.E.2d 567, 570. The law favors the voluntary resolution of disputes, and accord and satisfaction is a common law means to that end. If one party could unilaterally accept the benefits but reject the burdens of a proposed accord and satisfaction, this time honored method of dispute resolution by private agreement would fail.

Thus, we hold, as a matter of law, that when Mominee presented the check and King cashed the check, an accord and satisfaction resulted which discharged any claim for unpaid commissions Mominee may have owed King. The judgment of the trial court is reversed, and we direct the trial court to enter judgment for Mominee on his affirmative defense.[1]

Reversed.

CHEZEM and RILEY, JJ., concur.

---

1. King also contends that the trial court's judgment may be sustained based on evidence of Mominee's lack of good faith and unconscionability. King asserts that because the Restatement Second of Contracts provides that lack of good faith and unconscionability are exceptions to the rule that negotiation of a check marked "payment in full" is accord and satisfaction between the parties, no accord and satisfaction occurred here. Contrary to King's assertion, the trial court made no finding that Mominee showed a lack of good faith or acted unconscionably in dealing with King. Similarly, we conclude that the evidence does not support a determination that Mominee lacked good faith or was unconscionable; rather, the evidence shows a good faith dispute between the parties.